# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| HORIZON LINES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  05-0952 (ESH) |
| | ) | |
| UNITED STATES OF AMERICA, *et al*., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMERICAN SEAFOODS COMPANY LLC, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

_____ )

## MEMORANDUM OPINION

Plaintiff Horizon Lines, LLC ("Horizon") has filed this challenge under the

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, to the ruling of the Bureau of

Customs and Border Protection ("CBP" or "Customs") interpreting the Third Proviso to Section

27 of the Merchant Marine Act of 1920 ("Jones Act"), ch. 250, 41 Stat. 988, codified as amended

at 46 U.S.C. app. § 883 (2004), to permit the transportation of frozen fish from Alaska to the East

Coast of the United States in a foreign-flagged vessel via a foreign port and over Canadian rail

lines without filing rate tariffs with the Surface Transportation Board ("STB").  In a previous

opinion, the Court granted American Seafoods Company, LLC's ("ASC") Motion to Intervene as

Defendant to protect its interest in a Customs ruling that is nearly identical to the one challenged

by Horizon.  *Horizon Lines LLC v. United States*, No. 05-952, slip op. at 6 (D.D.C. Sept. 23,

2005).  Currently before the Court are cross-motions for summary judgment filed by Horizon,

CBP and ASC, and ASC's Motion to Dismiss for Lack of Subject Matter Jurisdiction.

## BACKGROUND

CBP is a government agency within the Department of Homeland Security responsible

for interpreting and enforcing the cabotage laws of the United States, including the Jones Act.[1]

The Jones Act is a protectionist statute that prohibits any goods "transported by water, or by land

and water . . . between points in the United States . . . either directly or via a foreign port," from

being shipped, "for any part of the transportation, in any other vessel than a vessel built in and

documented under the laws of the United States and owned by persons who are citizens of the

United States."  46 U.S.C. app. § 883.  Vessels meeting the requirements of § 883 are referred to

as "Jones Act qualified."  Foreign-flagged vessels are not Jones Act qualified, but may still

engage in domestic, or "coastwise," trade if they meet certain statutory exemptions.  The

exemption at issue in this case, known as the Third Proviso, permits non-qualified vessels to

transport

> merchandise . . . between points within the continental United
> States, including Alaska, over through routes heretofore or
> hereafter recognized by the Surface Transportation Board for
> which routes rate tariffs have been or shall hereafter be filed with
> the Board when such routes are in part over Canadian rail lines and
> their own or other connecting water facilities.

---

[1] At the time of the initial ruling at issue in this case, the agency was known as the U.S.
Customs Service and resided within the Department of the Treasury.  In 2002, Congress passed
the Homeland Security Act, Pub. L. 107-296, 116 Stat. 2135 (2002), which transferred the
agency to the Homeland Security Department and renamed it the Bureau of Customs and Border
Protection.  *Id*. §§ 403, 1502.

*Id*.  Thus, CBP has found that a non-qualified vessel may engage in non-contiguous coastwise

trade where:

> a) through routes are utilized which have heretofore or are
> hereafter utilized by the [STB].
>
> b) routes rate tariffs have been or shall hereafter be filed with the
> [STB], and have not subsequently been rejected for filing, have
> become effective according to their terms, and have not been
> subsequently suspended, or withdrawn by the [STB].
>
> c) the routes utilized are in part over Canadian rail lines and their
> own or other connecting water facilities.

(Headquarters Ruling Letter ("HRL") 112085 at 3; AR 69).  Customs has also "held that 'over

Canadian rail lines' means simply over rail trackage in Canada, and that 'their own or other

connecting water facilities' means water facilities covered by a through route regardless of

whether those facilities connect directly with the Canadian rail line covered by that through

route."  (*Id*.)

Plaintiff Horizon is a Jones Act qualified shipper and thus competes with non-qualified

shippers and water carriers that operate in the U.S. non-contiguous domestic trade pursuant to an

exception to the Jones Act.  (Buchanan Aff. ¶ 6.)  One such competitor is Sunmar Shipping, Inc.

("Sunmar"), which on August 9, 2003, received a Ruling Letter from CBP, which was then the

U.S. Customs Service, finding that Sunmar's proposed method of shipping frozen fish from

Dutch Harbor, Alaska to Boston, Massachusetts via New Brunswick, Nova Scotia was in

compliance with the Third Proviso.  (HRL 115446 ("*Sunmar I*") at 6; AR 48.)  Specifically,

Sunmar proposed to charter non-Jones Act qualified vessels to move the goods from Alaska to

Bayside, New Brunswick, a port that is approximately 6 miles south of St. Stephen, New

Brunswick, across the St. Croix River from the Calais, Maine point of entry to the United States.

Rather than proceed directly to Calais, however, Sunmar proposed to move the goods in a

triangular pattern, first by truck to either McAdam or St. John, New Brunswick and then via a

Canadian rail carrier from McAdam to St. John or St. John to McAdam.  (*Sunmar I* at 2; AR 44.)

From there, the goods would be trucked to Calais and into the United States.  (*Id*.)  This method

adds approximately 145 miles to the route prior to entry into the United States.  (Plaintiff's

Motion for Summary Judgment (Pl.'s Mot.) at 7.)

      Notwithstanding the Third Proviso's explicit rate tariff filing requirement, Customs

approved Sunmar's proposed method of shipping despite the fact that Sunmar did not intend to

file rate tariffs for any portion of the route.  The agency noted that frozen processed fish or

seafood has been exempted since 1983 from any rate tariff filing requirement when transported

by rail.  (*Sunmar I* at 2, *citing* Exemption From Regulation – Rail Transportation – Frozen Food,

Ex Parte No. 346 (Sub-No. 15), 367 I.C.C. 859 (Nov. 30, 1983); AR 44.)  It also referenced the

Interstate Commerce Commission Termination Act ("ICCTA"), which abolished the ICC,

deregulated much of what had been under the ICC's jurisdiction, and vested all the ICC's

remaining authority in the newly created STB.  (*Sunmar I* at 4, *citing* ICCTA § 201(a), Pub. L.

104-88, 109 Stat. 803 (Dec. 29, 1995) (codified as amended at 49 U.S.C. § 702.)  Section

204(a)(2) of the ICCTA abolished obsolete ICC regulations, and the STB's new regulations only

required rail carriers to make rates and service terms publicly available upon formal request.  49

C.F.R. § 1300.2(a).  Customs reasoned that, "although the statute specifies the filing of rate

tariffs with the [STB], mechanistic adherence to that requirement in the present climate of

deregulation would lead to an absurd result that cannot be justified."  (*Sunmar I* at 5 (internal

quotation marks omitted); AR 47.)  "Accordingly," Customs concluded, Sunmar's proposal "is

not prohibited merely because no tariffs may be filed to cover the movements."  (*Id.*)

On July 21, 2003, Horizon petitioned CBP to revoke or modify *Sunmar I*, arguing that

Sunmar failed to comply with the Third Proviso's tariff filing requirements and that the proposed

route was "commercially absurd and purposeless," and thus contrary to the statutory intent of the

Third Proviso.  (Letter from Myles Ambrose, Counsel to Horizon Lines LLC, to Glen Vereb,

Branch Chief, Entry Procedures and Carriers Branch, U.S. Customs and Border Protection

(July 21, 2003) at 2; AR 21.)  In response, CPB requested guidance from the STB regarding the

rate tariff filing requirement.  (Letter from Glen Vereb to Vernon Williams, Secretary, Surface

Transportation Board (Sept. 24, 2003); AR 14.)  STB informed Customs that, while the ICCTA

had "eliminated tariff filing for rail carriers" and the Trucking Industry Regulatory Reform Act of

1994, Pub. L. No. 103-311, 108 Stat. 1683 (Aug. 26, 1994), had done the same for "motor

carriers of property," the ICCTA continued to require "water carriers operating in the U.S.

noncontiguous domestic trade . . . to file tariffs with the STB." (Letter from Melvin Clemens,

Director, Surface Transportation Board to Glen Vereb (Dec. 4, 2003) ("STB Letter"), *citing* 49

U.S.C. § 13702; AR 12.)  The tariff requirement for water carriers "applies to commodities

otherwise exempted from regulation for rail or motor service."  (*Id.*)

STB also observed that no tariffs "bearing the description 'routes rates [sic] tariffs'" are

accepted by the STB; rather, all tariffs are "rate tariffs [that] are not route-specific."  (*Id.*; AR 13.)

Where rate tariff filings are required, however, carriers may provide route and other service

information "so long as it is clearly identified **for informational purposes only**."  (*Id.*

(emphasis in original).)  Further, STB found that the rate tariff filing requirement applied only to

5

"common carriers . . . that hold out their services to the public generally," and opined that

because CBP described Sunmar as "using chartered vessels[,] . . . Sunmar's operations could be

considered private carriage and non-jurisdictional to the STB for tariff filing purposes." (*Id*.)

On January 21, 2004, CBP denied Horizon's request to revoke or modify *Sunmar I*.

(HRL 116021 ("*Sunmar II*"); AR 7.)  The agency ruled that because "Sunmar is using chartered

foreign-flagged vessels, which are private carriage, Sunmar's operations are not within the

jurisdiction of the STB [and] Sunmar . . . cannot file rate tariffs with the STB for any purpose,

even informational." (*Sunmar II* at 4; AR 10.)  "Thus," the agency concluded, "it was not

possible for Sunmar to comply with the rate tariff filing requirements in the Third Proviso." (*Id*.)

CBP further reasoned that Sunmar's inability to comply "should not result in a <u>de facto</u> exclusion

of all chartered non-coastwise-qualified vessels from transporting merchandise coastwise in

compliance with those remaining requirements of the Third Proviso [because] mechanistic

adherence to that requirement for private carriage which is not within the jurisdiction of the STB

is unjustified." (*Id*. (emphasis in original).)  The agency also rejected Horizon's argument that

the Third Proviso contained an implied "commercial usefulness" requirement, noting that the

term "through route" has not previously been interpreted to require the most "direct" route.

(*Sunmar II* at 5; AR 11.)

Horizon sought further reconsideration on March 17, 2004, arguing that CBP's response

in *Sunmar II* took "unwarranted liberties with the statute" and posed "a significant risk to the

military, economic and homeland security interests of the United States." (Letter from Myles

Ambrose, Counsel for Horizon to Robert Bonner, Commissioner, Bureau of Customs and Border

Protection (Mar. 17, 2004); AR 4.)  Specifically, Horizon argued that CBP erred by failing to

construe the Third Proviso narrowly and by declining to find that "sham" rail movement fell

outside the protection of the Third Proviso.  (*Id*. at 2; AR 5.)  Customs again rejected Horizon's

petition.  In its March 28, 2005 Ruling Letter, it incorporated by reference its decision in *Sunmar*

*II* and reiterated that "the plain language of a law . . . need not be followed where necessary to

avert absurd or impossible results [such as] impossibility of compliance."  (HRL 116185 at 2

(March 28, 2005) ("*Sunmar III*"); AR 2.)

Horizon commenced this action on May 15, 2005, challenging CBP's *Sunmar* rulings as

"arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law under § 706

of the Administrative Procedure Act.  (Pl.'s Mot. at 9 *quoting*  5 U.S.C. § 706(2)(A).)  ASC

moved to intervene to protect its interest in HRL 115124 (Aug. 11, 2000) ("*ASC* Ruling"), an

interest that CBP referred to in *Sunmar I* as "nearly identical" to that of Sunmar.  (*Sunmar I* at 5;

AR 47.)  The parties, including defendant-intervenor ASC, have filed cross-motions for summary

judgment.  ASC has also filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction.  In

addition, the Court received briefs from *amici curiae*: one from Kennecott Holdings Corporation

("Kennecott") and Teck Cominco Alaska Incorporated ("Teck Cominco") in support of

defendant's and defendant-intervenor's motions for summary judgment ("Kennecott Br.") and

one from Totem Ocean Trailer Express, Inc. ("TOTE") in support of plaintiff's motion ("TOTE

Br.").  After reviewing the submissions of the parties and *amici*, the Court will grant Horizon's

Motion for Summary Judgment ("Pl.'s Mot.") and deny CBP's Motion for Summary Judgment

("Def.'s Mot."), ASC's Cross-Motion for Summary Judgment ("ASC SJ Mot.") and ASC's

Motion to Dismiss for Lack of Subject Matter Jurisdiction ("ASC Jur. Mot.").

# ANALYSIS

## I.     ASC's Motion to Dismiss

As an initial matter, ASC challenges both the Court's jurisdiction to hear this case and Horizon's standing to bring it.[2] Specifically, ASC argues that exclusive jurisdiction over this matter rests with the Court of International Trade ("CIT") under 28 U.S.C. § 1581(h) or (I) (2000), and that even if the Court has jurisdiction, Horizon has failed to satisfy the requirements for Article III standing.[3]  (ASC SJ Mot. at 7 -15.)  Neither argument has merit.

---

[2] *Amici curiae* Kennecott and Teck Cominco assert that the statute of limitations on Horizon's cause of action has run, leaving the Court without jurisdiction.  (Kennecott Br. at 17.) ASC did not raise a statute of limitations challenge in its Cross-Motion for Summary Judgment, but it did incorporate *amici's* argument in its reply.  (ASC Reply at 23-24.)  Notably, CBP does not assert a statute of limitations bar.  *Amici*'s argument is devoid of merit.  First, *Amici* and ASC cite 28 U.S.C. § 1658, which provides a four-year limitations period for civil actions based on federal claims.  That statute, however, does not apply to suits against the United States under the APA, which are subject to a six-year limitation period.  28 U.S.C. § 2401(a); *see Crown Coat Front Co. v. United States*, 386 U.S. 503, 507 (1967) (applying § 2401(a) to review of agency action).   Second, *amici* attempt to trace Horizon's cause of action not to *Sunmar I* on August 9, 2001, for which Horizon clearly filed within the limitations period, but to July 23, 1998, the date CBP issued HRL 114407, which approved a transportation scenario "nearly identical" to that in *Sunmar*.  (Kennecott Br. at 18; *Sunmar I* at 5-6.)  A cause of action under the APA accrues on the date of final agency action.  *Harris v. F.A.A.*, 353 F.3d 1006, 1009-10 (D.C. Cir. 2004).  *Amici* cite no case, however, for the proposition that a prior agency decision commences the statute of limitations for all future substantially similar rulings.  Moreover, the D.C. Circuit has held that when "for any reason the agency reopens a matter and, after reconsideration, issues a new and final order, that order is reviewable on the merits, even though the agency merely reaffirms its original decision."  *Sendra Corp. v. Magaw*, 111 F.3d 162, 167 (D.C. Cir. 1997).  Thus, to the extent that *Sunmar I* and HRL 114407 contain identical rulings, *Sunmar I* could be considered to represent a reconsideration of its decision in HRL 114407, thereby extending the time for Horizon to file a petition for review.

[3] Significantly, the government does not raise any procedural challenges to Horizon's ability to prosecute its claim.

A.      **Subject Matter Jurisdiction**

The Court has jurisdiction over Jones Act claims under both the general federal-question provision, 28 U.S.C. § 1331, and the specific grant of admiralty and maritime jurisdiction.  28 U.S.C. § 1333(1).  The CIT is a specialized court of limited jurisdiction.  *See Kmart Corp. v. Cartier, Inc.*, 485 U.S. 176, 182-89 (1988) (not all importation prohibitions fall within CIT's exclusive jurisdiction).  The CIT's jurisdiction extends only to the review of pre-importation restrictions on specific merchandise: "classification, valuation, rate of duty, marking, restricted merchandise, entry requirements, drawbacks, vessel repairs, or similar matters."  28 U.S.C. § 1581(h).  This case relates to compliance with the cabotage laws of the United States; *i.e.*, restrictions on methods of merchandise transportation, not merchandise importation.[4]  ASC's reliance on 28 U.S.C. § 1581(i)(3) and (4), conferring CIT jurisdiction over "embargoes or other quantitative restrictions on the importation of merchandise" and the administration of such embargoes, is likewise misplaced.  While the Jones Act arguably imposes an "importation prohibition" on goods not shipped in compliance with its terms, such restrictions do not fall within the statutory definition of "embargo" as used in § 1581(i)(3).  The Third Proviso to the Jones Act "does not set a governmentally determined quantitative limit on the entry of . . . any particular product."  *Kmart Corp.*, 485 U.S. at 186.  Rather, it relates to restrictions on maritime and other types of shipping, leaving this Court with jurisdiction under both 28 U.S.C. §§ 1331 and 1333(1).

---

[4]Even the CIT's jurisdiction over "vessel repairs" relates to the dutiability of such repairs under 19 U.S.C. § 1466 (2000), not the transportation of such goods.  *See Sea-Land Serv., Inc. v. United States*, 239 F.3d 1366 (Fed. Cir. 2001).

**B.      Standing**

ASC's standing argument fares no better.  The law of standing is well-established.  The "irreducible constitutional minimum of standing" consists of injury-in-fact, causation, and redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  "That is, to establish standing under Article III, a complainant must allege (1) a personal injury-in-fact that is (2) fairly traceable to the defendant's conduct and (3) redressable by the relief requested."  *Rainbow/PUSH Coal.v. F.C.C.*, 396 F.3d 1235, 1240 (D.C. Cir. 2005) (internal quotation marks and citations omitted).  In addition, when, as here, a party asserts a claim under the APA, it must establish that the injury alleged "falls within the 'zone of interests' sought to be protected by the statutory provision whose violation forms the legal basis of [plaintiff's] complaint."  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 883 (1990) (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 396-97 (1987)).

Horizon alleges a competitive injury that results from CBP's decision to permit non-Jones Act qualified vessels to transport goods under the Third Proviso that would otherwise have to be shipped by a Jones Act qualified shipper such as Horizon.  (Buchanan Aff. ¶ 6.)  A long line of precedent supports the principle that when a "particular statutory provision . . . reflect[s] a legislative purpose to protect a competitive interest, the injured competitor has standing to require compliance with that provision."  *Hardin v. Ky. Utils. Co.*, 390 U.S. 1, 6 (1968); *see, e.g., Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 488 (1998); *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 152 (1970); *MD Pharm., Inc. v. DEA*, 133 F.3d 8, 11 (D.C. Cir. 1998).  It is indisputable that the Jones Act is a protectionist statute that seeks, *inter alia*, to enhance the competitiveness of American shippers.  *See* Jones Act, 46 U.S.C.

app. § 861 ("[I]t is declared to be the policy of the United States to do whatever may be necessary to develop and encourage the maintenance of . . . a merchant marine," "owned and operated privately by citizens of the United States.")  As an American-owned and -operated shipper, Horizon falls squarely within the zone of interests protected by the Jones Act, *Allen v. Wright*, 468 U.S. 737 (1984), and may assert competitive injury as a basis for standing.

ASC contends, nonetheless, that Horizon has failed to allege its competitive injury with sufficient specificity to establish Article III standing.  *Warth v. Seldin*, 422 U.S. 490, 508 (1975). In support, ASC cites *Shipbuilders Council of Am. v. United States*, which involved a third party challenge to a Customs ruling interpreting the Jones Act to permit non-coastwise-qualified barges to perform certain "dry-docking" operations.  868 F.2d 452 (D.C. Cir. 1989).  The Court dismissed the case for lack of jurisdiction and lack of standing.  The facts of that case, however, are not analogous to this one.  In *Shipbuilders,* plaintiff, a trade association that was not party to Custom's original ruling, only petitioned the agency to repeal its ruling one day prior to filing its complaint in federal court.  Thus, the complaint was not based on any agency action adverse to plaintiff and was therefore ruled to be non-justiciable.  *Id.* at 455-56.  Had the plaintiff in *Shipbuilders* timely filed an administrative challenge, as Horizon has in this case, a denial of its petition would have constituted "final agency action" subject to judicial review under the APA. *Id*. at 455.

The Court then went on to find that the plaintiff's allegations failed to present "specific, concrete facts " demonstrating that it was injured by Custom's ruling.  *Id*. at 457 (internal quotation marks omitted).  Plaintiff's injury in *Shipbuilders* was far more speculative than Horizon's.  In *Shipbuilders*, the trade association could not demonstrate that any of its members

was capable of performing the dry-docking operation at issue in the case. *Id.* at 457. Plaintiff's alleged injury amounted to nothing more than its hypothesis that "if the Customs interpretation continues to govern, foreign barges will probably displace barges that otherwise eventually would be built and operated" by the trade association's members. *Id.* Here, there is no question that Horizon, as a coastwise-qualified carrier engaged in shipping from Alaska to ports on the eastern seaboard, is capable of performing the work done by non-qualified shippers under the Third Proviso. Thus, Horizon is in direct competition for the very business that can be obtained by Sunmar and ASC as a result of Customs' current interpretation of the Third Proviso.

Once it is found that Horizon's "illegal competition" argument is sufficient to constitute injury-in-fact, the additional requirements of causation and redressability are easily satisfied. Horizon's putative injury is the result of CBP's allegedly unreasonable interpretation of the Third Proviso. *Liquid Carbonic Indus. Corp. v. F.E.R.C.*, 29 F.3d 697, 701 (D.C. Cir. 1994) ("Increased competition represents a cognizable Article III injury."). Vacatur of the agency's ruling would prevent Horizon's competitors from making use of CBP's flawed ruling, thereby eliminating Horizon's competitive injury. *America's Cmty. Bankers v. F.D.I.C.*, 200 F.3d 822, 828-29 (D.C. Cir. 2000) ("Where an agency rule causes the injury, the redressability requirement may be satisfied . . . by vacating."). Thus, Horizon meets both the constitutional and prudential requirements of standing.[5]

---

[5] ASC further asserts that the case is moot because Sunmar no longer makes use of the ruling at issue. (ASC SJ Mot. at 15.) Regardless of whether this is the case, Horizon maintains an active claim for at least two reasons. First, Sunmar could rely on the *Sunmar* rulings to begin using the proposed route at any time, causing Horizon an injury that is capable of repetition yet evading review. *S. Pac. Terminal Co. v. I.C.C.*, 219 U.S. 498, 515 (1911). Second, other shippers do make use of a route virtually identical to that described in the *Sunmar* rulings, which causes Horizon a continuing harm. (ASC Mot. to Intervene at 2-4.) Moreover, the *Sunmar*

## II.    Standard of Review

Agency action reviewed under the APA may not be overturned unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The parties agree that the Customs rulings at issue are not entitled to *Chevron* deference, *see Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984), but are nevertheless entitled to deference under *Skidmore v. Swift Co.*, 323 U.S. 134 (1944).  *See also United States v. Mead Corp.*, 533 U.S. 218, 232 (2001) (applying *Skidmore* deference to tariff classifications by U.S. Customs Service).  Under *Skidmore*, an agency action is entitled to a level of deference commensurate with "the degree of the agency's care, its consistency, formality and relative expertness and . . . persuasiveness of the agency's position."  *Mead*, 533 U.S. at 228.

## III.   Customs' Interpretation of the Jones Act

Customs and ASC contend that the agency's interpretation of the Third Proviso is not only reasonable, and therefore persuasive under *Skidmore*, it is compelled by Congress's deregulation of the shipping industry.  (Def.'s Mot. at 5-7; ASC SJ Mot. at 20-23.)  According to

---

rulings retain legal effect even if Sunmar does not make use of the rights conferred therein, as evidenced by the fact that any substantially identical Customs ruling will be revoked as a matter of law if the Court vacates the *Sunmar* rulings.  *See Sea-Land Serv.*, 239 F.3d at 1373.

ASC's position regarding standing and mootness are certainly undercut by the position it took regarding its standing to intervene in this action.  (*See* ASC's Reply to Pl.'s Opp. to Mot. to Intervene at 2-5.)  ASC sought to intervene to protect its "substantially identical ruling" that would be invalidated if the *Sunmar* rulings were overturned, resulting in "harmful financial consequences that will befall ASC."  (*Id*. at 5.)  Recognizing the potential for competitive injury to ASC if the *Sunmar* rulings were vacated, this Court permitted intervention, finding that "ASC will be unable to conduct its business as currently structured and will suffer substantial monetary loss" if plaintiff prevails.  *Horizon Lines LLC v. United States*, No. 05-952, slip op. at 6 (D.D.C. Sept. 23, 2005).  Given the obvious interrelatedness between the *Sunmar* rulings and the *ASC* ruling, it is difficult to understand ASC's argument that this matter is moot or that plaintiff lacks standing.

the agency, the "abolishment of rate tariff filing requirements for domestic rail and motor carriers consummated by the ICCTA was a small part of a sweeping change in the law toward deregulation of the transportation industry." (Def.'s Mot. at 9.)  The ICCTA, however, contained "no hint . . . of any intent to render the Third Proviso meaningless or do away with this limited exception to the Jones Act." (Def.'s Mot. at 10.)  Therefore, CBP reasons, "the only way to honor congressional intent both in deregulating transportation and in [maintaining] the Third Proviso was to approve the Sunmar shipment, despite the lack of a rate tariff." (Def.'s Mot. at 11.)  ASC likewise argues that denying use of the Third Proviso to shippers like Sunmar would result in an implied repeal of the Proviso. (ASC SJ Mot. at 21.)  *See J.E.M. AG Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 142 (2001) (holding that the "only permissible justification for repeal by implication is when the earlier and later statutes are irreconcilable") (internal quotation omitted).

Horizon argues that, far from being persuasive, CBP's *Sunmar* rulings ignore basic principles of statutory interpretation, rendering them arbitrary and capricious under the APA. (Pl.'s Mot. at 12-30.)  According to Horizon, by failing to construe the Third Proviso narrowly, CBP has undermined congressional intent to protect American shipping companies and to ensure national security by maintaining an active merchant marine.[6/] (Pl.'s Mot. at 3-4, 15.)

_____

[6/] Plaintiff also argues that the Third Proviso contains an implied prohibition on "sham or commercially impractical Canadian rail movement to achieve 'technical compliance' with the literal terms of the statute." (Pl.s Mot. at 16.)  In support, plaintiff argues that the term "through routes" as used in the Third Proviso means the most "direct" route. (*Id.*)  Yet, Horizon concedes that a "through route" has been defined by the Supreme Court merely as "an arrangement, express or implied, between [transportation providers] for the continuous carriage of goods from the originating point on the line of one carrier – to destination on the line of another." *St. Louis Sw. Ry. Co. v. United States*, 245 U.S. 136, 139 n.4 (1917).  (Pl.'s Opp. & Reply at 15-16.)  Plaintiff can point to no case in which the intent of the shipper, other than to transport goods

14

Specifically, Horizon contends that Customs departed from the "plain language" rule, which holds that in matters of statutory construction, "the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstances, is finished." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992) (citing *Demarest v. Manspeaker*, 498 U.S. 184, 190 (1991)). (Pl.'s Mot. at 12-13.) Moreover, Horizon claims that CBP has read the rate tariff filing requirement out of the Third Proviso, contrary to the "cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 489 n.13 (2004) (internal quotation marks and citations omitted). (Pl.'s Mot. at 27.)

The Court agrees that Customs has failed to adhere to accepted principles of statutory construction and finds, moreover, that the persuasiveness of Customs' interpretation, as reflected in the *Sunmar* rulings, is undermined by factual flaws and inconsistencies.

### A.    *Sunmar* Rulings are Inconsistent and Factually Flawed

CBP's conclusion in *Sunmar I* that "mechanistic adherence to [the Third Proviso's rate tariff filing] requirement would lead to an absurd result" appears to be premised on the belief that the elimination of the "the rail tariff filing requirement" by the ICCTA (and regulations promulgated pursuant thereto) means that "no tariffs may be filed to cover the movements."

---

according to the route described, was relevant to the determination of whether a through route existed. If Congress wishes to limit the use of the Third Proviso to specific routes or to require the STB to evaluate the commercial soundness of a proposed route, it has the authority to do so, but the Third Proviso as currently written contains no such requirement.

(*Sunmar I* at 5; AR 47.)   If no rate tariffs could be filed by any carrier, the agency reasoned, failing to read the tariff filing requirement out of the statute would render the Third Proviso a nullity.  (*Id*.)  Yet, CBP's position that the STB no longer accepts rate tariff filings for any method of transportation relevant to the Third Proviso is simply incorrect.  The STB specifically informed CBP after Horizon filed its petition for reconsideration that "[w]ater carriers operating in noncontiguous domestic trade are required to file tariffs with the STB," including for "commodities otherwise exempted from regulation for rail or motor service."  (STB Letter at 1; AR 12.)  The STB also noted that while it did accept rate tariff filings for "common carriers," it had no jurisdiction over private carriage.  (STB Letter at 1; AR 12.)  Because Sunmar "chartered" the foreign vessels at issue, the STB opined, it may be engaged in private carriage and therefore non-jurisdictional with respect to the rate tariff filing requirement.  (STB Letter at 2; AR 13.)  Nevertheless, at least some class of carriers – foreign common carriers – must still comply with the tariff filing requirement of the Third Proviso, contrary to Customs' assertion in *Sunmar I* that "no tariffs may be filed to cover the movements."[7]  (*Sunmar I* at 5; AR 47.)

The agency recognized and conceded its error regarding the elimination of all rate tariffs in *Sunmar II*:

> We agree . . . that when a non-coastwise-qualified vessel is used to move merchandise in the noncontiguous domestic trade and in part over a Canadian rail line in order to utilize the exemption to the 'Jones Act' as provided in the Third Proviso, rate tariffs should be filed with STB, only for informational purposes.

---

[7]  It is worth noting that CBP appears to equate the elimination of the *rail* rate tariff filing requirement, previously codified at 61 Fed. Reg. 29036, with the elimination of rate tariffs altogether.  "[T]he rail tariff filing requirement has been removed . . . .  Accordingly, . . . no tariffs may be filed to cover the movements."  (*Sunmar I* at 5; AR 47.)  As the STB Letter makes clear, this is not the case.

(*Sunmar II* at 4; AR 10.)  But the agency's error regarding rate tariffs certainly casts serious doubt on the reliability of its legal conclusions.  *See City of Kansas City, Mo. v. Dep't of Housing and Urban Dev.*, 923 F.2d 188, 194 (D.C. Cir. 1991) ("Agency action based on a factual premise that is flatly contradicted by the agency's own record does not constitute reasoned administrative decisionmaking, and cannot survive review under the arbitrary and capricious standard.")

Moreover, while the agency corrected one of its errors, *Sunmar II* and *III* perpetuate other mistakes.  First, Customs appears to misinterpret the STB letter by concluding that "rate tariffs should be filed with STB, only for informational purposes."  (*Sunmar II* at 4; AR 10.)  To the contrary, the STB made clear that only information that is *not* required to be filed as part of the tariff itself, such as routing, service information or advertising material, may be filed for informational purposes.  (STB Letter at 2; AR 13.)  The filing of the tariff itself is not merely "for informational purposes;" it is mandatory.

Second, even though the agency recognized its error in *Sunmar II*, it again ignored the facts by asserting in *Sunmar III* that "if such STB-related requirements as contained in the text of the Third Proviso were to continue to be required, *no carrier whatever* would be entitled to use the proviso."  (*Sunmar III* at 2 (emphasis added); AR 2.)  As the STB Letter makes clear, there is a class of carriers – foreign-flagged vessels providing common carriage in the non-contiguous domestic trade – that do in fact file rate tariffs with the STB.  By again repeating the fallacious argument that no party can comply with the Third Proviso's tariff filing requirement, the agency appears to be reaching a "decision . . . not based on consideration of the relevant factors."  *City of Waukesha v. E.P.A.*, 320 F.3d 228, 257-58 (D.C. Cir. 2003) (internal quotation marks omitted).

Third, the agency appears to further err in *Sunmar III* when it states that because the STB "no longer approves any route-specific rate tariff filings[,] . . . no carrier whatever would be entitled to use the Proviso" if Customs still applied the tariff filing requirement of the Third Proviso. (*Sunmar III* at 2; AR 2.) As made clear by ASC, despite CBP's historical use of the term "routes rate tariffs," *see* HRL 115124 at 4 (Aug. 11, 2000); HRL 11987 at 2 (December 2, 1991); HRL 105721 at 2 (July 23, 1982), there is no evidence that "routes rate tariff" as used in the Third Proviso is intended to signify anything other than a typical "rate tariff" filed with the STB. (*See* ASC SJ Mot. at 20 n.15.) A "rate tariff" is not route-specific except to include the origin and destination of the goods. (AR 13.) Thus, CBP's reasoning in *Sunmar III* that the text of the Third Proviso requires a type of tariff "no longer approve[d]" by the STB is fallacious; the STB has never required any more specific route information.[8]

Finally, the agency's new rationale, as articulated in in *Sunmar II* and *III*, which draws a distinction between common carriage and private carriage, is far from persuasive. The STB noted in offering its informal opinion to Customs that because Sunmar was "using chartered vessels," its "operations *could* be considered private carriage and non-jurisdictional to the STB for tariff filing purposes." (STB Letter at 2 (emphasis added); AR 13.) CBP seized on this supposition in rejecting plaintiff's petition for reconsideration to and jumped to the conclusion that, "as the STB opinion clearly states, . . . Sunmar is using chartered foreign-flagged vessels, which are private carriage." (*Sunmar II* at 4; AR 10.) As such, "it was not possible for Sunmar

---

[8] Indeed, in one possible reading of the Third Proviso, the phrase "for which routes," in the provision that reads "over through routes heretofore or hereafter recognized by the [STB] *for which routes* rate tariffs have been . . . filed," appears to modify the preceding reference to "through routes" rather than the subsequent "rate tariffs." 46 U.S.C. app. § 883.

to comply with the rate tariff filing requirements in the Third Proviso." (*Id*.)  While an agency may be able to alter its rationale in response to new information, it must still "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.' " *Motor Vehicles Mfrs. Ass'n of the United States v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines*, *Inc. v. United States*, 371 U.S. 156, 168 (1962)).  Here, the agency assumed, without explanation or citation to any facts, that a "chartered" vessel invariably falls within the category of private carriage.  As *amicus curiae* TOTE demonstrates, however, a "charter" is merely a "lease" of a ship, which can then be used by the charterer either to transport its own cargo exclusively (private carriage) or to offer common carriage to the public.  (TOTE Br. at 10-12.)  In the face of this argument, the agency concedes that "the vessel chartered by Sunmar could theoretically be engaged for either private carriage or common carriage," but then concludes that since Sunmar identified itself as the charterer and shipper in its ruling request, it can be "presume[d]" that it was not a "carrier."  (Def.'s Reply at 5.)  This presumption, however, appears not to have any record support, and in the absence of any "reasoned explanation" for classifying Sunmar as a private carrier, it is difficult to credit the agency's conclusion that Sunmar is exempt from the Third Proviso because it may be a private carrier.  *BellSouth Corp. v. F.C.C.*, 162 F.3d 1215, 1222 (D.C. Cir. 1999) ("Where the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, we must undo its action." (internal quotation marks omitted)).

## B.     The *Sunmar* Rulings Contravene Recognized Canons of Statutory Construction

Customs justifies its decision to permit Sunmar to make use of the Third Proviso without filing any rate tariffs by arguing:

> The inability of Sunmar to comply with STB filing requirements because private carriage is outside the jurisdiction of the STB should not result in a *de facto* exclusion of all chartered non-coastwise-qualified vessels from transporting merchandise coastwise in compliance with those remaining requirements of the Third Proviso.  Such exclusion would be tantamount to administratively repealing the Third Proviso for all chartered vessels.

(*Sunmar II* at 4; AR 10.)  "Thus," the agency concluded:

> the only reading that gives full effect to the Third Proviso for all vessels is that non-chartered non-coastwise-qualified, or in other words vessels that are public (i.e. common) carriers, are required to file rate tariffs with the STB, even if only for informational purposes, and chartered vessels (i.e., private carriers) are thus exempted from such filing.

(*Sunmar II* at 4; AR 10.)  As the preceding section makes clear, it is apparent that CBP's factual conclusion is wrong, since not all chartered vessels would be prohibited from making use of the Third Proviso.  And, because CBP's factual error provides the foundation for its statutory analysis, its interpretation of the law cannot withstand scrutiny.

It is generally accepted that unless two statutes "cannot mutually coexist," *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976), courts have a duty "to regard each statute as effective."  *J.E.M. AG Supply*, 534 U.S. at 144.  Contrary to the agency's interpretation, the Third Proviso can be reconciled with the STB's existing tariff filing requirements by excluding only

those chartered vessels who engage in private carriage.[9/]   It makes just as much sense, and is

more consistent with the statute and accepted principles of statutory interpretation, to limit the

scope of the Proviso to comport with the STB's current rate filing requirements.   In fact,

Customs has already taken this approach when interpreting the effect of deregulation on the

Third Proviso.   *See* 18 Cust. B. & Dec. 969 (1983) ("We have ruled that if the Interstate

Commerce Commission does not accept for filing a rate tariff in connection with a through route

for such transportation and there is no rate tariff in effect for that through route, the ocean

transportation portion of that service may not be performed by a non-coastwise-qualified vessel

under the third proviso to 46 U.S.C. § 883.")

Notwithstanding the effort expended by CBP and ASC in arguing against the implied

repeal of the Third Proviso (*Sunmar II* at 4, AR 10; *Sunmar III* at 2-3; AR 2-3; ASC SJ Mot. at

20-23; Def.'s Mot. at 7-11), CBP's interpretation in the *Sunmar* rulings would have just such an

effect at least with respect to private carriers.   It is a " 'cardinal rule . . . that repeals by

implication are not favored.' "   *Morton v. Mancari*, 417 U.S. 535, 549 (1974) (quoting *Posadas

v. Nat'l City Bank*, 296 U.S. 497, 503 (1936).   "The only permissible justification for repeal by

implication is when the earlier and later statutes are irreconcilable."   *J.E.M. AG Supply*, 534 at

141-42 (internal quotation marks omitted).   The agency argues that the "broad legislative goals"

of the ICCTA "toward deregulation of the transportation industry" compel it to read out the tariff

filing requirement in order to avoid eliminating the Third Proviso entirely.   (Def.'s Mot. at 10-11;

---

[9/] Moreover, the agency gives no rational explanation for why private carriers should
receive the benefits of the Third Proviso without filing rate tariffs while public carriers continue
to labor under the tariff filing requirement.  *See Transactive Corp. v. United States*, 91 F.3d 232,
237 (D.C. Cir. 1996) ("A long line of precedent has established that an agency action is arbitrary
when the agency offer[s] insufficient reasons for treating similar situations differently.")

*Sunmar II* at 4; AR 10.)  But as discussed *supra*, the ICCTA did not eliminate all relevant rate

tariff filing requirements.  Thus, it is the agency's interpretation that impliedly repeals the tariff

filing requirement of the Third Proviso for private carriers.

Moreover, unless the intent of the legislature to repeal the prior statute is "clear and

manifest," *Watt v. Alaska*, 451 U.S. 259, 267 (1981) (internal quotation marks omitted), courts

have a "duty . . . to regard each as effective."  *J.E.M. AG Supply*, 534 U.S. at 143.  Courts must

also assume that "'Congress legislates with knowledge of former related statutes, . . . and will

expressly designate the provisions whose application it wishes to suspend, rather than leave that

consequence to the uncertainties of implication compounded by the vagaries of judicial

construction.'" *United States v. Hsia*, 176 F.3d 517, 525 (D.C. Cir. 1999) (quoting *United States

v. Hansen*, 772 F.2d 940, 947-48 (D.C. Cir. 1985)).  Nonetheless, the agency concedes that

congressional intent was to preserve the Third Proviso and acknowledges that when it enacted

the ICCTA, Congress passed "conforming amendments to numerous statutes . . . including the

Jones Act." (Def.'s Mot. at 10, 22.)  In particular, Congress substituted "Surface Transportation

Board" for "Interstate Commerce Commission" in the language of the Proviso, 46 U.S.C. app.

§ 883 (2004), but despite its desire to promote deregulation through the passage of the ICCTA, it

did not delete the rate tariff filing requirement, as the agency has done here.

Customs appears to attribute Congress's failure to amend the Third Proviso to

inadvertence.  Perhaps it was.  But "courts are not at liberty to pick and choose among

congressional enactments." *Traynor v. Turnage*, 485 U.S. 535, 548 (1988) (internal quotation

marks omitted).  This is particularly so when a conflict exists between a broad congressional

enactment and a narrowly-tailored statutory provision.  *See Norwest Bank Minn. Nat'l Ass'n v.*

*FDIC*, 312 F.3d 447, 451 (D.C. Cir. 2002) ("When both specific and general provisions cover the same subject, the specific provision will control, especially if applying the general provision would render the specific provision superfluous.").  In one of its very few decisions interpreting the Third Proviso to the Jones Act, the Supreme Court held that a Canadian-owned railroad company could not engage in coastwise trade unless goods were actually moved over rail lines in Canada, notwithstanding the fact that the Interstate Commerce Act gave the ICC jurisdiction over "'the transportation of passengers or property . . . partly by railroad and partly by water when both are used under a common control.'"  *Cent. Vt. Transp. Co. v. Durning*, 294 U.S. 33, 40 (1935) (quoting 49 U.S.C. app. § 6(13)(b)).  Reading the more general Interstate Commerce Act to be consistent with the Third Proviso, the Court concluded that the "application of [the Third Proviso's] prohibition in terms to any part of the transportation 'by land or water,' by a foreign owned vessel, is not to be erased from the statute because the Interstate Commerce Commission was not given authority to enforce it."  *Cent. Vt. Transp. Co.*, 294 U.S. at 40.  Similarly, there is no reason to rewrite the tariff filing requirement here, simply because the STB is no longer authorized under the ICCTA to accept rate tariffs for a certain class of foreign-owned shippers who wish to make use of the Third Proviso.

The agency argues that in order to "give full effect to the Third Proviso for all vessels," it must ignore the rate tariff filing requirement.  (*Sunmar II* at 4; AR 10.)   But when two statutes potentially conflict, the agency's obligation is not to "give full effect" to one over the other; rather, its obligation is to "regard each as effective."  *Traynor*, 485 U.S. at 548.  Moreover, there is no indication that Congress ever intended the agency to interpret the Third Proviso to apply to as many vessels as possible.  *See Cent. Vt. Transp. Co.*, 294 U.S. at 39 ("An interpretation of the

proviso which would enable foreign owned vessels to carry merchandise in coastwise traffic [without complying with its terms] would go beyond its purpose and in large measure defeat the prohibition of section 27.").  Indeed, the agency recognizes this when it admits that "the Third Proviso represents a limited exception to the general requirement in section 883 prohibiting a foreign vessel" from engaging in coastwise trade.  (*Sunmar III* at 2; AR 2).  Despite this recognition, the agency's interpretation expands the Proviso to permit a non-coastwise-qualified private shipper to engage in noncontiguous domestic trade without filing a rate tariff with the STB.  This interpretation ignores both the plain language of the statute and the congressional intent in enacting it, and is not necessary to avoid inconsistency with the ICCTA.  It is within the authority of Congress to expand the scope of the Third Proviso, and the fact that certain foreign vessels that wish to take advantage of the Proviso are unable to is the concern of the legislature and not the agency.

## CONCLUSION

For the foregoing reasons, the Court finds that Customs rulings in *Sunmar I*, *II*, and *III* are "arbitrary, capricious [and] not in accordance with law," 5 U.S.C. § 706(2)(A), and remands this case to CBP for further proceedings not inconsistent with this Memorandum Opinion.  An appropriate order accompanies this Memorandum Opinion.

_____s/_____
ELLEN SEGAL HUVELLE
United States District Judge

Date:   February 10, 2006