**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **HORIZON LINES, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No.  05-0952 (ESH)** |
| ) | |
| **UNITED STATES OF AMERICA,** *et al.*, ) | |
| ) | |
| **Defendants,** ) | |
| ) | |
| **and** ) | |
| ) | |
| **AMERICAN SEAFOODS COMPANY LLC,** ) | |
| ) | |
| **Defendant-Intervenor.** ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on defendant-intervenor American Seafoods

Company's ("ASC") motion to alter or amend judgment.  Plaintiff Horizon Lines' ("Horizon")

lawsuit challenges a ruling by the Bureau of Customs and Border Protection ("Customs" or

"CBP") interpreting the Third Proviso to Section 27 of the Merchant Marine Act of 1920 ("Jones

Act"), ch. 250, 41 Stat. 988, codified as amended at 46 U.S.C. app. § 883 (2004), to permit the

transportation of frozen fish from Alaska to the East Coast of the United States via a foreign port

and over Canadian rail lines in a foreign-flagged vessel without filing rate tariffs with the Surface

Transportation Board ("STB").  On February 10, 2006, the Court granted plaintiff's motion for

summary judgment, finding Customs' ruling to be arbitrary and capricious under the

Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  *Horizon Lines LLC v. United States*,

No. 05-952 slip. op. at 7 (D.D.C. Feb. 10, 2006) ("February 10 Opinion").  ASC now asks the

Court to reverse its decision to grant summary judgment for plaintiff.  Because the Court did not

commit clear error in its February 10 Opinion, it will deny defendant-intervenor's motion to alter

or amend judgment.

## BACKGROUND

The facts of this dispute are laid out in detail in the Court's February 10 Opinion.  *Id*. at

2-7.  Therefore, the Court will provide an abbreviated description of the events leading to the

instant motion.  The Jones Act restricts the transportation of goods in coastwise, i.e. domestic,

trade:

> No merchandise . . . shall be transported by water, or by land and
> water . . . between points in the United States . . . either directly or
> via a foreign port . . . for any part of the transportation, in a vessel
> other than a vessel built in and documented under the laws of the
> United States and owned by persons who are citizens of the United
> States.

46 U.S.C. app. § 883.  Horizon is qualified under the Jones Act to engage in coastwise trade.

(Buchanan Decl. ¶ 6(b).)  ASC is not.  Headquarters Ruling Letter ("HRL") 115124 (Aug. 11,

2000) ("*ASC* Ruling").  The Jones Act permits some exceptions to its blanket prohibition on

coastwise trade by non-qualified vessels.  The statutory exemption at issue in this case, known as

the Third Proviso, permits non-qualified vessels to transport

> merchandise . . . between points within the continental United
> States, including Alaska, over through routes heretofore or
> hereafter recognized by the Surface Transportation Board for
> which routes rate tariffs have been or shall hereafter be filed with
> the Board when such routes are in part over Canadian rail lines and
> their own or other connecting water facilities.

46 U.S.C. app. § 883.  Another non-qualified shipper, Sunmar Shipping, Inc. ("Sunmar"), sought

and received a Ruling Letter from CBP authorizing it under the Third Proviso to ship frozen fish

from Dutch Harbor, Alaska to Boston, Massachusetts via New Brunswick, Nova Scotia.  HRL

115446 (Aug. 9, 2003) ("*Sunmar I*").  Upon arrival at Bayside, New Brunswick, approximately 6

miles south of the St. Stephen, New Brunswick / Calais, Maine point of entry, the goods were to

be transported by truck and train over a 145 mile circuit before crossing into the United States at

St. Stephen.  *Sunmar I* at 1.  Sunmar did not intend to file a rate tariff for any portion of the route.

Customs approved Sunmar's proposal, notwithstanding the Third Proviso's rate tariff filing

requirement, holding that "mechanistic adherence to that requirement in the present climate of

deregulation would lead to an absurd result that cannot be justified."  *Sunmar I* at 4 (internal

quotation marks omitted).

On July 21, 2003, Horizon petitioned CBP to revoke or modify *Sunmar I*, arguing, *inter

alia*, that its interpretation failed to give effect to the Third Proviso's tariff filing requirements.

(AR 21.)  Customs turned to the STB for guidance regarding the rate tariff filing requirement

(AR 14), and was informed that, while rail carriers and motor carriers no longer filed rate tariffs,

"water carriers operating in the U.S. noncontiguous domestic trade are required to file tariffs with

the STB."  (AR 12.)  The STB noted that the tariff filing requirement was limited to "common

carriers . . . that hold out their services to the public generally," and did not extend to "private

carriage."  (AR 12.)  Based on the information provided by the STB, Customs changed the

rationale for its decision in *Sunmar I*, but still denied Horizon's request for revocation.  HRL

116021 (Jan. 21, 2004) ("*Sunmar II*").  Abandoning its position that "no tariffs may be filed to

cover the movements," *Sunmar I* at 4, the agency found that "when a non-coastwise-qualified

vessel" makes use of the Third Proviso, "rate tariffs should be filed with STB."  *Sunmar II* at 4.

Nevertheless, the agency approved Sunmar's proposal, finding that Sunmar was engaged in

private carriage, and therefore "it was not possible for Sunmar to comply with the rate tariff

filing requirements in the Third Proviso." *Sunmar II* at 4.  Horizon sought further

reconsideration, but Customs rejected the petition, returning to its position from *Sunmar I* that "if

such STB-related requirements as contained in the text of the Third Proviso were to continue to

be required, *no carrier whatever* would be entitled to use the proviso."  HRL 116185 at 2 (Mar.

28, 2005) ("*Sunmar III*") (emphasis added).

Horizon brought suit in federal court on May 15, 2005, challenging CBP's *Sunmar*

rulings as "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law"

under § 706 of the APA.  5 U.S.C. § 706(2)(A).  ASC's motion to intervene was granted to

permit it to protect its interest in HRL 115124 (Aug. 11, 2000) ("*ASC* Ruling"), a decision

identified by CBP as "nearly identical" to *Sunmar I.  Horizon Lines LLC v. United States*, No.

05-952, slip op. at 2 (D.D.C. Sept. 23, 2005).  After rejecting ASC's jurisdictional and standing

arguments, the Court granted summary judgment on the merits in favor of Horizon, finding

CBP's *Sunmar* rulings to be "arbitrary and capricious" under the APA.  Feb. 10 Op. at 24.  The

Court reasoned that Customs "failed to adhere to accepted principles of statutory construction,"

and that "the persuasiveness of Customs' interpretation" of the Third Proviso was "undermined

by factual flaws and inconsistencies."  Feb. 10 Op. at 15.  The Court found that Customs'

assertion that "no carrier whatever would be entitled to use the proviso" if the rate tariff filing

requirement was retained, *Sunmar III* at 2, was contradicted by the administrative record.  Feb.

10 Op. at 17, 20.  Therefore, the Court concluded, the agency's implied repeal of the tariff filing

requirement "ignore[d] both the plain language of the statute and . . . [was] not necessary to

avoid inconsistency" with statutes deregulating the shipping industry.  ASC now brings a motion

to alter or amend judgment under Fed. R. Civ. P. 59(e).

## ANALYSIS

ASC seeks reconsideration of four rulings from the Court's February 10 Opinion: (1) its

decision that jurisdiction over Horizon's claim properly lay in federal district court, rather than in

the Court of International Trade ("CIT"); (2) that Horizon's competitive injury conferred

standing to challenge CBP's *Sunmar* rulings; (3) that for non-contiguous domestic trade, the

scope of the Third Proviso should be commensurate with the STB's current rate filing

requirements; and (4) that the term "routes rate tariff" as used in the Third Proviso is equivalent

to the "rate tariffs" currently accepted by the STB.  (Def.'s Mot. for Reconsideration ("Def.'s

Mot.") at 2-13.)

## I.    Standard of Review Under Rule 59(e)

"The district court has considerable discretion in ruling on a Rule 59(e) motion." *Piper v.*

*U.S. Dep't of Justice*, 312 F. Supp.2d 17, 21 n.1 (D.D.C. 2004).  Granting such a motion "is an

unusual measure," *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam), that

occurs "only when the moving party establishes extraordinary circumstances." *Niedermeier v.*

*Office of Baucus*, 153 F. Supp.2d 23, 28 (D.D.C. 2001).  "Rule 59(e) motions 'need not be

granted unless the district court finds that there is an intervening change of controlling law, the

availability of new evidence, or the need to correct clear error or manifest injustice.' "

*Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998) (quoting *Firestone*, 76 F.3d at

1208).

## II.    Jurisdiction and Standing

ASC's first two arguments, relating to jurisdiction and standing, can be treated together. ASC contends that the Court clearly erred when it held that the Jones Act did not constitute an "embargo" as used in 28 U.S.C. § 1581(I) and *Kmart Corp. v. Cartier, Inc.*, 485 U.S. 176, 186 (1988), and therefore did not fall within the CIT's limited jurisdiction. Feb. 10 Op. at 9. ASC further argues that the Court erroneously found that Horizon's Jones Act challenge did not involve "pre-importation restrictions on specific merchandise" subject to CIT jurisdiction under 28 U.S.C. § 1581(h). (Def.'s Mot. at 2-6.) With respect to standing, ASC argues that the administrative record does not support the Court's finding of a competitive injury sufficient to confer standing. (Def.'s Mot. at 6-7.)

These arguments are basically a rehash of the arguments ASC presented at the summary judgment stage. "A Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled." *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995). ASC presents no new theory or evidence to support its arguments regarding jurisdiction and standing. Rather, it merely disagrees with how the Court weighed the facts and interpreted the case law. Such a disagreement provides no basis for the Court to reconsider its decision. A "Rule 59(e) motion is not a second opportunity to present argument upon which the Court has already ruled." *W.C. & A.N. Miller Co. v. United States*, 173 F.R.D. 1, 3 (D.D.C. 1997). Therefore, the Court declines to reconsider its jurisdictional and standing rulings.

## III.    Effect of the Court's February 10 Opinion

ASC's third argument is that the Court's interpretation of the Third Proviso renders "superfluous" the "core of the Third Proviso." (Def.'s Mot. at 9.) According to ASC, because

6

"the only carriers still required to file rate tariffs with the STB are water common carriers engaged in non-contiguous trade," by finding it "more consistent with the statute and accepted principles of statutory interpretation[] to limit the scope of the Third Proviso to comport with the STB's current rate filing requirements," the Court unintentionally gutted the Third Proviso's applicability to carriers engaged in contiguous domestic trade.  (Def.'s Mot. at 9.)  ASC's argument reads too much into the Court's opinion.

The Court's February 10 Opinion found the *Sunmar* rulings to be arbitrary and capricious because the agency "failed to adhere to accepted principles of statutory construction," and because the rulings were riddled with "factual flaws and inconsistencies."  Feb. 10 Op. at 15. The issue before the Court related solely to the applicability of the Third Proviso in the context of non-contiguous domestic trade, *i.e.*, trade routes outside the continental United States.  Horizon's claim was that Customs had improperly interpreted the rate tariff filing requirement in the Third Proviso as it applied to water carriers shipping goods from Alaska to the continental United States.  (*See* Horizon's Opp. to ASC's Mot. for Summ. J. at 20 ("[W]hile Congress deregulated domestic rail and trucking services, it did not deregulate water transportation to or from Alaska."))  The STB's rate tariff requirements for contiguous domestic trade within the continental United States was not a subject before the Court.  With respect to non-contiguous domestic trade, however, the Court found that the agency incorrectly concluded that to deny Sunmar use of the Third Proviso because it was engaged in private carriage " 'would be tantamount to administratively repealing the Third Proviso for all chartered vessels.' "  Feb. 10 Op. at 20 (quoting *Sunmar II* at 4).  Contrary to CBP's assertion in *Sunmar II*, common carriers,

whether chartered or not, are required to file rate tariffs and therefore can meet the requirements of the Third Proviso.  *Id*.

Thus, in the context of non-contiguous domestic shipping, the Court concluded that it was "more consistent with the statute and accepted principles of statutory interpretation, to limit the scope of the Proviso to comport with the STB's current rate filing requirements."  *Id*. at 21.  In reaching this conclusion, the Court relied both on Customs' prior rulings, *see* 18 Cust. B. & Dec. 969 (1983) ("We have ruled that if the Interstate Commerce Commission does not accept for filing a rate tariff in connection with a through route for such transportation and there is no rate tariff in effect for that through route, the ocean transportation portion of that service may not be performed by a non-coastwise-qualified vessel under the third proviso."), and the principle that an agency acts arbitrarily and capriciously when it "offer[s] insufficient reasons for treating similar situations differently."  *Transactive Corp. v. United States*, 91 F.3d 232, 237 (D.C. Cir. 1996).  Whether these concerns apply with equal force with respect to contiguous coastwise trade was not before the Court, and it therefore had no occasion to express an opinion regarding the agency's treatment of shippers engaged in contiguous trade under the Third Proviso.  Therefore, ASC's argument regarding the effect of the Court's opinion on contiguous trade under the Third Proviso is insufficient to persuade the Court that it erred in its ruling.

**IV.    The Court's Route Rate Tariffs Finding Was Not Essential To It's Decision**

ASC's final contention is that the Court erred in finding that "there is no evidence that 'routes rate tariff' as used in the Third Proviso is intended to signify anything other than a typical 'rate tariff' filed with the STB."  Feb. 10 Op. at 18.  "Thus," the Court concluded, "CBP's reasoning in *Sunmar II* that the text of the Third Proviso requires a type of tariff 'no longer

approve[d]' by the STB is fallacious; the STB has never required any more specific route

information." *Id*. This conclusion was based on ASC's concession in its motion for summary

judgment that it was "aware of nothing, either in the Third Proviso's legislative history or in

pertinent case law, suggesting that the meaning of 'route rate tariff' is distinct from the meaning

of 'rate tariff.'" (ASC Mot. for Summ. J. at 20, n.15.) Now, ASC belatedly attempts to show

that "the Court and all of the parties and *amici* overlooked evidence that, at the time of the

enactment of the Third Proviso . . . the term 'route rates tariff[]'" had a different meaning than

that of the STB's current "rate tariffs." (Def.'s Mot. at 10.) "Even the STB's informal advice

letter ," ASC admits, "made no reference to such evidence." (Def.'s Mot. at 10.)

     In support of its new assertion, ASC cites to two old decisions by the Interstate

Commerce Commission indicating that, at one time, routing information was required when

filing a rate tariff. *See Kelly Milling Co. v. Atchison, T. & S.F. Railway Co.*, 178 I.C.C. 39, 49

(1931); *Iron and Steel Rates*, 243 I.C.C. 243, 246 (1941). ASC also pinpoints a shift between

1996 and 1997 when the STB amended its regulations to do away with the requirement that rate

tariffs include a routing statement describing "each carrier and the point of interchange in the

proper order from origin to destination." 49 C.F.R. § 1315(a) (Oct. 1, 1996 ed.); *cf.* STB Ex

Parte No. 618, 62 Fed. Reg. 19058 (April 18, 1997) (eliminating the mandatory identification of

routing information when filing a rate tariff).

     As a general matter, a Rule 59(e) motion is not "a means to bring before the Court

theories or arguments that could have been advanced earlier." *W.C. & A.N. Miller Co. v. United

States*, 173 F.R.D. 1, 3 (D.D.C. 1997). Nor should it be used to "present evidence that could

have been raised prior to the entry of judgment." Moreover, even if ASC were correct in its

argument, it would not provide a reason for reversing the Court's decision to remand the matter

to the agency for further proceedings.  The Court's finding regarding routing information in rate

tariffs was only one of several factual discrepancies apparent in CBP's *Sunmar* Rulings that

caused the Court to reject the CBP's conclusion.  Notably, the Court found that CBP erronously

concluded that "no tariffs may be filed to cover the movement[]" of goods from Alaska to

Bayside, New Brunswick, *Sunmar I* at 5, despite the STB's explicit instruction that "[w]ater

carriers operating in noncontiguous domestic trade are required to file tariffs with the STB."

Feb. 10 Op. at 16.  CBP's opinion also appeared to "equate the elimination of the *rail* rate tariff

filing requirement . . . with the elimination of rate tariffs altogether."  *Id*. at 16, n.7.  CPB treated

the rate tariff filing requirement as "only for informational purposes," *Sunmar II* at 4, which was

a misreading of the STB's requirement.  Feb. 10 Op. at 17.  Additionally, Customs assumed

without record evidence that Sunmar was engaged in private rather than common carriage.  Feb.

10 Op. at 18.

The extent of the inconsistency and error throughout CBP's *Sunmar* rulings rendered the

Court unable to conclude that the agency had "examine[d] the relevant data and articulate[d] a

satisfactory explanation for its action including a 'rational connection between the facts found

and the choice made,' " *Motor Vehicles Mfrs. Ass'n of the United States v. State Farm Mutual*

*Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S.

156, 168 (1962)), and therefore, the new argument now raised by ASC to contradict its prior

filing does not amount to extraordinary circumstances within the meaning of Rule 59(e).

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that defendant-intervenor ASC's

motion to alter or amend judgment [#38] is **DENIED**.


<u>                              s/                              </u>
ELLEN SEGAL HUVELLE
United States District Judge


Date:   April 14, 2006